# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2015-CA-00644-COA

**ILLINOIS CENTRAL RAILROAD COMPANY**  **APPELLANT**

**v.**

**BENNIE OAKES, DECEASED, BY AND**  **APPELLEE**
**THROUGH CLARA HAGAN, HIS**
**REPRESENTATIVE**

DATE OF JUDGMENT: 03/01/2013
TRIAL JUDGE: HON. ISADORE W. PATRICK JR.
COURT FROM WHICH APPEALED: WARREN COUNTY CIRCUIT COURT
ATTORNEYS FOR APPELLANT: GLENN F. BECKHAM
HARRIS FREDERICK POWERS III
ATTORNEYS FOR APPELLEE: HENRY DEAN ANDREWS JR.
TIMOTHY W. PORTER
PATRICK MALOUF
JOHN TIMOTHY GIVENS
NATURE OF THE CASE: CIVIL - PERSONAL INJURY
TRIAL COURT DISPOSITION: DENIED MOTION FOR SETOFF
DISPOSITION: AFFIRMED - 12/13/2016
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

### BEFORE IRVING, P.J., CARLTON AND GREENLEE, JJ.

### GREENLEE, J., FOR THE COURT:

¶1.     This is an appeal from Warren County Circuit Court stemming from a jury verdict in an asbestos-related action in which Bennie Oakes was awarded $50,000. The jury found that Oakes had $250,000 of damages, with Illinois Central Railroad Company found to be twenty percent negligent and Oakes eighty percent negligent. Following the jury verdict, Illinois Central moved for a setoff of Oakes's damages, asserting that his award should be reduced by the amounts received from asbestosis trust funds and other sources for the same injury.

Because the complaint was filed under the Federal Employers' Liability Act (FELA) and that act seeks to fully compensate the employee for tortious conduct, we affirm the circuit court's denial of the setoff.

### FACTS AND PROCEEDINGS BELOW

¶2.     Clara Hagan, the daughter and representative of Oakes, filed suit against Illinois Central under the FELA seeking damages for the lung cancer and death sustained by Oakes as a result of Oakes's exposure to asbestos while working for Illinois Central. Prior to and during the pendency of the complaint, Oakes or his representatives sought recovery for Oakes's lung cancer and death from others, including several asbestos trusts. Illinois Central sought to determine the exact amounts recovered by Oakes through a lengthy and difficult discovery process. The amounts recovered by Oakes or his representatives from others totaled $74,056.89 according to Illinois Central.[1]

¶3.     The case went to trial and, on February 15, 2013, Hagan obtained a jury verdict against Illinois Central, reduced by Oakes's comparative negligence, in the net amount of $50,000. Following the verdict, Illinois Central moved for entry of the judgment and setoff of the award based on the trust payments received by Oakes and Hagan that Illinois Central unearthed through its diligent discovery.[2] On March 1, 2013, the circuit court denied Illinois

[1] This amount is based on Hagan's supplemental answer 13 to Illinois Central's first request for interrogatories, which was an exhibit to Illinois Central's motion for "Entry of Judgment and Setoff."

[2] We note that Illinois Central does not assert, nor do we see anything from the record demonstrating, that it contributed to any of the trusts from which Hagan received payments.

2

Central's motion for setoff and entered the judgment of damages to Hagan of $50,000 with interest at an eight-percent rate from the date of the judgment of the jury. Illinois Central appealed the circuit court's denial of setoff to this Court.

**DISCUSSION**

¶4.     Illinois Central's appeal boils down to one question: whether setoff against a jury verdict is required in FELA cases where the claimant has already settled with separate tortfeasors.

¶5.     The standard of review for a ruling on a motion to alter or amend a judgment is abuse of discretion. *Fulton v. Miss. Farm Bureau Cas. Ins.*, 105 So. 3d 284, 286-87 (¶9) (Miss. 2012). Questions of law are reviewed de novo. *Green v. State*, 195 So. 3d 246, 248 (¶6) (Miss. Ct. App. 2016). "[The] FELA creates a tort remedy for railroad workers injured on the job and serves as the exclusive remedy for a railroad employee injured as a result of his or her employer's negligence." *Ill. Cent. R.R. v. Brent*, 133 So. 3d 760, 766-67 (¶10) (Miss. 2013). This Court is bound to enforce the FELA as written by the Congress and interpreted by the federal courts. *Id*. at 767 (¶10). In a case brought under the FELA, all matters of substantive rights, as opposed to procedural ones, are governed by the applicable principles of the common law as interpreted and applied in the federal courts. *St. Louis-San Francisco Ry. v. Dyson*, 207 Miss. 639, 43 So. 2d 95, 98 (1949).

¶6.     In support of its claim that it is entitled to a setoff for an alleged settlement Hagan received from a nonparty, Illinois Central cites eight cases from other jurisdictions in which the railroad employers were allowed a setoff. *Schadel v. Iowa Interstate R.R.*, 381 F.3d 671

3

(7th Cir. 2004); *Benson v. CSX Transp. Inc.*, 274 F. App'x 273 (4th Cir. 2008); *Mancini v. CSX Transp.*, No. 08-CV-933, 2010 WL 2985964 (N.D.N.Y. July 27, 2010); *Krueger v. Soo Line R.R.*, No. 02-C-0611, 2005 WL 2234610 (E.D. Wisc. Sept. 12, 2005); *Strasburg v. Union Pac. R.R.*, 839 N.W.2d 273 (Neb. 2013); *Hess v. Norfolk S. Ry.*, 835 N.E.2d 679 (Ohio 2005); *Seaford v. Norfolk S. Ry.*, 835 N.E.2d 717 (Ohio 2005); *Hager v. Norfolk & W. Ry.*, No. 87553, 2006 WL 3634373 (Ohio Ct. App. Dec. 14, 2006). Five of these cases, *Schadel*, *Benson*, *Mancini*, *Krueger*, and *Strasburg*, are immediately distinguishable from the case at hand as the setoff sought was in connection to settlement recoveries from actual parties to the employees' actions. *Schadel*, 381 F.3d at 673-74; *Benson*, 274 F. App'x at 274; *Mancini*, 2010 WL 2985964, at *1; *Krueger*, 2005 WL 2234610, at *1; *Strasburg*, 839 N.W.2d at 276. Thus, they are inapposite to our analysis.[3] The collateral sources that settled with the claimants here are not parties to the action, nor were they attempted to be made parties to the action.

¶7.     The remaining cases, *Hess*, *Seaford*, and *Hager*, involved recoveries obtained from nonparties. *Hess*, 835 N.E.2d at 682; *Seaford*, 835 N.E.2d at 717; *Hager*, 2006 WL 3634373, at *8-9. *Seaford* and *Hager* base their rulings solely on *Hess*; thus, we proceed directly to an analysis of *Hess*. In *Hess*, the railroad sought a setoff of damages the employees recovered in their claims against asbestos manufacturers. *Hess*, 835 N.E.2d at 681-82. The Ohio

---

[3] *Strasburg* is also inapposite to our analysis because the setoff in that case was granted under the authority of 45 U.S.C. § 55 (2012) as the employer did make payments to insurance as a direct result of the employee's injury.

Supreme Court's majority opinion held that neither 45 U.S.C. § 55 nor the common law collateral-source rule prohibited the employer from being credited for amounts paid in settlement by a fellow tortfeasor and allowed the railroad a pro tanto credit for the settlements. *Hess*, 835 N.E.2d at 686-87, 689.

¶8.     *Hess*'s conclusion on the setoff issue was premised on the common-law rule of apportionment, where a partial satisfaction received from one of multiple joint tortfeasors serves to diminish the liability of the nonsettling tortfeasor. *Id*. at 686. The *Hess* court's premise overlooks the U.S. Supreme Court's rejection of the suggestion that the FELA would permit damages to be apportioned among joint tortfeasors according to the degree of fault attributable to each. *Norfolk & W. Ry. v. Ayers*, 538 U.S. 135, 161-65 (2003). The *Ayers* Court found significant that Congress, while expressly directing in the FELA the apportionment of responsibility between employer and employee based on comparative fault, did not provide for such apportionment among potentially liable tortfeasors. *Id*. at 161.

¶9.     In considering the employer's assertion that the trial court erred in instructing the jury not to make a deduction from the damages awarded for the contribution of nonrailroad causes of the employees' injuries, the *Ayers* Court held that the FELA did not allow for apportionment of damages between railroad and nonrailroad causes. *Id*. at 159-60. "Nothing in the statutory text [of the FELA] instructs that the amount of damages payable by a liable employer bears reduction when the negligence of a third party also contributed in part to the injury-in-suit." *Id*. at 160. The *Ayers* Court declined to create new law by requiring

5

apportionment among potential tortfeasors and determined that the FELA's express terms placed the burden of seeking contribution from other tortfeasors on the employer. *Id*. at 141. This conclusion was echoed by the dissent in *Hess* and reaffirmed by the Missouri Court of Appeals. *Hess*, 835 N.E.2d at 690; *Palmer v. Union Pac. R.R.*, 311 S.W.3d 843, 855-56 (Mo. Ct. App. 2010).

¶10.    *Hess* also held that the common-law collateral-source rule would not prohibit a setoff based on amounts paid in settlement by a nonparty tortfeasor. We disagree. Section 55 of the FELA specifically incorporates the interpretation of the collateral-source rule concerning insurance payments, and the Supreme Court in its *Ayers* language implied that a doctrine such as the collateral-source rule would be applicable. Furthermore, the common law, as here in Mississippi, has long stated that a "wrongdoer is not entitled to have the damages to which he is liable reduced by proving that [the] plaintiff has received or will receive compensation or indemnity for the loss from a collateral source, wholly independent of him." *Coker v. Five-Two Taxi Serv.*, 211 Miss. 820, 52 So. 2d 356, 357 (1951). To the extent that federal law is informative on the matter, Mississippi's interpretation of the collateral-source rule has been recognized and applied by the Fifth Circuit, *Johnson v. Cenac Towing Inc.*, 544 F.3d 296, 304-05 (5th Cir. 2008), and acknowledged by the United States Supreme Court, *The Atlas*, 93 U.S. 302, 310-11 (1876).

¶11.    Because an injured railroad employee can recover all his damages from his railroad employer if the employer's negligence caused any part of the employee's injury, and because

6

the collateral-source rule does not allow for a defendant to avoid payment of damages based on compensation to the plaintiff from a third party that was not a party to the action, we find that an allowance of setoff for recoveries from nonparty tortfeasors is inconsistent with the FELA's intent, the statutory language, and Mississippi and U.S. Supreme Court precedent.[4]

**CONCLUSION**

¶12.   We affirm the Warren County Circuit Court's denial of Illinois Central's motion for setoff.

¶13.   **THE JUDGMENT OF THE CIRCUIT COURT OF WARREN COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

**LEE, C.J., IRVING, P.J., ISHEE, CARLTON, FAIR AND JAMES, JJ., CONCUR. BARNES, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. WILSON, J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY GRIFFIS, P.J.**

**WILSON, J., DISSENTING:**

¶14.   The jury in this Federal Employers' Liability Act (FELA) case awarded the plaintiff (Hagan) damages for injuries that her decedent (Oakes) suffered as a result of his exposures

---

[4] The dissent would give pro tanto credit to Illinois Central for the amounts previously received from suppliers of asbestos procured through some means other than the instant lawsuit. This Court, as was the court below, is unaware of how and under what conditions those payments occurred as they were made by entities that are not parties herein. The Court does not have the necessary information to allocate damages in direct proportion to their percentages of fault. The only method to determine the issues that would surround those payments would have been to make those entities parties to this action. Had they been made parties, perhaps we would have pertinent evidence to consider or perhaps the jury and the court could have apportioned liability appropriately, with all parties involved. We decline to speculate on what a fully informed trial court or jury would have done, and, therefore, affirm the trial court's ruling.

7

to asbestos while he was employed by Illinois Central. The sole issue in this appeal is whether the judgment against Illinois Central should be offset (i.e., reduced) based on settlement payments that Hagan or Oakes previously received from the bankruptcy trusts of the manufacturers of the asbestos to which Oakes was exposed. The majority rule on this issue of federal law is that Illinois Central is entitled to such an offset, also known as a "pro tanto credit." This rule is consistent with background common law, and it is not inconsistent with the FELA. The majority reaches the opposite conclusion, holding that payments Hagan or Oakes have already received for the exact same injury must be ignored—and that Hagan is entitled to recover more than once for the same injury. I disagree and respectfully dissent.

¶15. "[A]lthough common-law principles are not necessarily dispositive of questions arising under [the] FELA, unless they are expressly rejected in the text of the statute, they are entitled to great weight in our analysis." *Consol. Rail Corp. v. Gottshall*, 512 U.S. 532, 544 (1994). Addressing the same issue that is raised in this case, the Ohio Supreme Court recognized that "it is well established at common law that apart from the collateral-source rule, a partial satisfaction received from one of two joint tortfeasors serves to diminish the liability of the nonsettling defendant." *Hess v. Norfolk S. Ry.*, 835 N.E.2d 679, 686 (¶31) (Ohio 2005). Accordingly, the Ohio Supreme Court held that as a matter of federal law a FELA defendant is entitled to a pro tanto (i.e., dollar-for-dollar) credit or offset for settlements paid to the plaintiff by non-FELA entities for the same injury. *Id.* at 689 (¶48). This is the correct approach, as nothing in the FELA's text expressly rejects a defendant's

8

common law right to such credits. The U.S. Court of Appeals for the Fourth Circuit, the U.S. Court of Appeals for the Seventh Circuit, and the Nebraska Supreme Court have all reached the same conclusion. *Schadel v. Iowa Interstate R.R.*, 381 F.3d 671, 678 (7th Cir. 2004); *Benson v. CSX Transp. Inc.*, 274 F. App'x 273, 276 (4th Cir. 2008); *Strasburg v. Union Pac. R.R.*, 839 N.W.2d 273, 280 (Neb. 2013); *see also, e.g.*, *Mancini v. CSX Transp. Inc.*, No. 08-CV-933, 2010 WL 2985964, at *6 (N.D.N.Y. July 27, 2010).

¶16.    The majority gives three reasons for departing from the majority rule on this issue of federal law. None of these reasons is persuasive. First, the majority says that all but one of the above-cited cases "are immediately distinguishable" and "inapposite" simply because the setoff in those cases related to a settlement paid by another named defendant in the case. The majority does not explain why this makes a difference or cite any authority suggesting that a defendant's right to a credit turns on whether the plaintiff's settlement was obtained in the same lawsuit or in some other context. The distinction makes no legal difference; the relevant question is simply whether the defendant is entitled to a setoff for settlements paid to the employee by other parties who contributed to the same injury.

¶17.    The majority next contends that *Norfolk & Western Railway v. Ayers*, 538 U.S. 135 (2003), abrogates FELA defendants' right to a pro tanto credit. However, *Ayers* only held that the FELA does not require "an initial apportionment of damages among potential tortfeasors"—i.e., in a FELA case, the jury does not assign fault to non-railroad defendants. *Id.* at 141. Instead, the FELA "allow[s] the worker to recover his entire damages from a

9

railroad whose negligence jointly caused an injury . . . , thus placing on the railroad the burden of seeking contribution from other tortfeasors." *Id.*

¶18.  The *Ayers* Court did *not* address the distinct question whether a railroad is entitled to a setoff for a settlement that the employee has already received from a third party.  In fact, the Court noted—without any suggestion of disapproval—that the trial court *in that very case* had granted such a setoff "for settlements with non-FELA entities."  *Id.* at 144.  Notably, Justice O'Connor joined the *Ayers* opinion in relevant part and later, sitting by designation, joined the Fourth Circuit's opinion holding that a FELA defendant is entitled to a pro tanto setoff for a settlement paid by another party who contributed to the plaintiff's injury. *Benson*, 274 F. App'x at 276.  Clearly, Justice O'Connor saw no inconsistency between *Ayers* and the allowance of such credits.

¶19.  It is one thing to hold, as the *Ayers* Court did, that an employee's recovery should not be reduced based on a jury's apportionment of fault to a nonparty.  It is quite another thing to suggest that an employee should be able to recover the same damages over and over again from different parties, without any offset for compensation he has already received.  *Ayers* addresses the former issue, but nothing in the opinion precludes recognition of a pro tanto credit for settlements already paid for the same injury.

¶20.  The majority also suggests that the common law collateral-source rule precludes pro tanto credits in this context.  However, "a joint tortfeasor is not a collateral source that can be ignored under the collateral-source rule."  22 Am. Jur. 2d *Damages* § 388 (2003) ("This

10

result is mandated by the rule that a plaintiff is entitled to only one recovery for a single injury . . . .").[5]  Hagan alleges that Oakes was injured when he was exposed to asbestos during his employment with Illinois Central.  The manufacturers of the asbestos to which Oakes was exposed are not "collateral sources."  They are joint tortfeasors whose own tortious conduct rendered them directly liable to Oakes (or Hagan) for the same injury sued on here.  The collateral-source rule is inapplicable to this situation.

¶21.    The defendant's right to such credits—and the inapplicability of the collateral-source rule—is reflected in our own common law.  "It has long been the practice in Mississippi that, when there are multiple potential defendants liable on a claim and a settlement is reached with some, but not all, defendants, those defendants who proceed to trial and suffer a judgment against them are entitled to credit on that judgment for those amounts received in settlement from entities not party to the litigation." *Brown v. N. Jackson Nissan Inc.*, 856 So. 2d 692, 697 (¶20) (Miss. Ct. App. 2003).[6]  "This practice has its origins in the notion that, though there may be multiple parties potentially liable for the plaintiff's injuries, a plaintiff is entitled to only one recovery of his damages." *Brown*, 856 So. 2d at 697 (¶20).

---

[5] "Where the independent tortious acts of two or more persons supplement one another and concur in contributing to and producing a single indivisible injury, such persons are in legal contemplation regarded as joint tortfeasors, notwithstanding the absence of concerted action." *D & W Jones Inc. v. Collier*, 372 So. 2d 288, 292 (Miss. 1979) (quoting 74 Am. Jur. 2d *Torts* § 62 (1974)).

[6] As this Court explained in *Brown*, our statutory law now provides that a defendant's liability will be reduced based on the jury's apportionment of fault at trial rather than a post-trial credit for any settlements paid.  *See Brown*, 856 So. 2d at 697 (¶21) (citing Miss. Code Ann. § 85-5-7 (Rev. 1999)).

¶22. Nothing in the FELA entitles the plaintiff to more than one recovery for his damages. This case involves an injury caused by exposure to asbestos; the plaintiff has already been compensated for this same injury by the manufacturers of the asbestos; and there is no reason that her recovery against Illinois Central should not be reduced to account for those payments. The purpose of the FELA is to afford the employee a *full* recovery for his injury, reduced only by the employee's comparative fault. *See Ayers*, 538 U.S. at 141; *Schadel*, 381 F.3d at 678; *Hess*, 835 N.E.2d at 689 (¶46). Allowing the railroad a credit for settlement payments that the plaintiff has already received for the same injury does not frustrate the plaintiff's ability to obtain a full recovery. It only prevents double recovery for the same injury. I would follow the majority rule permitting such credits in FELA cases. Accordingly, I respectfully dissent.[7]

**GRIFFIS, P.J., JOINS THIS OPINION.**

---

[7] In a footnote, the majority argues that Illinois Central is not entitled to a setoff because "[t]his Court and the court below are unaware of how and under what conditions [the relevant settlement] payments occurred as they were made by entities not a party herein." Indeed, the majority goes so far as to assert that "[t]he *only* method" for Illinois Central to have established its right to a setoff would have been to join the asbestos entities as parties. *Ante* at n.4 (emphasis added). This is simply incorrect. Hagan acknowledged in response to an interrogatory that the relevant settlements payments were based on the same "injuries [and] damages incurred allegedly due to [Oakes's] exposure to asbestos, silica, dust, sand or other substances as asserted in this suit against Illinois Central." This is all that Illinois Central needed to establish to obtain a setoff. It was unnecessary for Illinois Central to join the asbestos entities or put on evidence of their relative "fault." Further, whether a defendant is entitled to a setoff based on a prior settlement is an issue for the trial judge, not the jury. *See Brown*, 856 So. 2d at 694, 698 (¶¶7, 22-27). Therefore, the majority also errs to the extent that it suggests Illinois Central could or should have presented the issue to a jury.

12